J-S43030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE T.S. AND E.S., MINORS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.H.-H., NATURAL MOTHER | No. 364 WDA 2017 |

Appeal from the Orders Dated February 3, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-208-2016
CP-02-AP-209-2016

| | |
|---|---|
| IN RE: T.S., E.S., MINORS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.H-.H., NATURAL MOTHER | No. 365 WDA 2017 |

Appeal from the Order Entered February 3, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000208-2016
CP-02-AP-0000209-2016

BEFORE: STABILE, SOLANO, and FITZGERALD, JJ.[*]

MEMORANDUM BY SOLANO, J.: **FILED AUGUST 25, 2017**

Appellant, T.H.-H. ("Mother"), appeals the order that involuntarily terminated her parental rights to her children, T.S. and E.S. (the "Children"),

_____

[*] Former Justice specially assigned to the Superior Court.

born in June 2013 and August 2014, respectively. We affirm the order on the basis of the trial court's opinion.

In its opinion, entered April 5, 2017, the trial court fully and correctly set forth the relevant facts and procedural history of this case. *See* Trial Ct. Op. at 2-6. The Allegheny County Office of Children, Youth and Families ("CYF") became familiar with Mother in August 2014 when E.S. was born. Mother had admitted to marijuana use while pregnant with E.S., and Mother tested positive for marijuana after the birth of E.S. CYF offered in-home services to assist Mother with her parenting and substance abuse issues. Mother continued to use marijuana, admitted to smoking it in the presence of the Children, and exhibited minimal parenting skills. As a result, an Emergency Custody Authorization was issued on July 2, 2015, and the Children were removed from Mother's care. The Children were adjudicated dependent on July 14, 2015. On September 15, 2015, the Children were placed in a foster home, where they have remained to date.

On November 9, 2016, CYF filed a petition for involuntary termination of Mother's parental rights to the Children. The trial court held a hearing on that petition on February 3, 2017. On that same day, it entered its order terminating Mother's parental rights to the Children, pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8) and (b).[1] On March 2, 2017, Mother filed timely

_____

[1] S.T.F.S. was identified as the Father of the Children. On November 9, 2016, CYF also filed a petition for involuntary termination of Father's
*(Footnote Continued Next Page)*

- 2 -

separate appeals with respect to her rights regarding T.S. and E.S. We consolidated those appeals *sua sponte*.

On appeal, Mother raises the following question:

> Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of Appellant's parental rights would serve the needs and welfare of the Children pursuant to 23 Pa.C.S. § 2511(b)?

Mother's Brief at 7.

In the argument section of her brief, Mother raises for the first time an issue not presented in the trial court or in her Statement of Errors under Appellate Rule 1925(b): that the Children were entitled to be represented by appointed legal counsel, separate from the attorney guardian *ad litem*, pursuant to **In re L.B.M.**, 161 A.3d 172, 183 (Pa. 2017).

In **L.B.M.**, a mother's parental rights to her two children were terminated by the trial court. At trial, the mother filed a motion requesting the appointment of independent counsel for the children. In the motion, the mother cited 23 Pa.C.S. § 2313(a),[2] and averred that the guardian *ad litem*'s

---

*(Footnote Continued)*

parental rights. The trial court terminated Father's parental rights to the Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b) in its February 3, 2017 order. Father has not appealed that aspect of the trial court's order.

[2] Section 2313(a) states:

> The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has

*(Footnote Continued Next Page)*

- 3 -

position "may be adverse to the [children's] position." ***In re L.B.M.***, 161 A.3d at 176. After the trial court denied the mother's motion, the mother appealed and this Court affirmed. The Supreme Court of Pennsylvania reversed and remanded to this Court, holding that the failure to appoint counsel for a child in a contested, involuntary termination of parental rights proceeding was a structural error. ***Id.*** at 183.

Here, Mother claims that the trial court's failure to appoint independent counsel was a structural error in the proceedings and that a remand for a new trial following the appointment of counsel for the Children therefore is required. Mother contends that her failure to raise this issue before now should be excused because the Supreme Court had yet to rule in ***L.B.M.*** at the time of trial and when Mother filed her Rule 1925(b) Statement.

On June 23, 2017, the guardian *ad litem* for the Children filed an application for leave to file a supplemental brief pursuant to Pa.R.A.P. 2501(a), which this Court granted. In the supplemental brief, the guardian *ad litem* responded to Mother's appointment-of-counsel issue and argued that, under this Court's interpretation of ***L.B.M.*** in ***In re D.L.B.***, ____ A.3d

*(Footnote Continued)* ————————————

> not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

- 4 -

___, 2017 WL 2590893 at *5-6 (Pa. Super. 2017), a guardian *ad litem* may serve as legal counsel for a child in an involuntary termination proceeding so long as the child's legal and best interests are not in conflict. **D.L.B.**, 2017 WL 2590893 at *5. The guardian *ad litem* added that no conflict has been identified here.

In her reply brief, Mother does not argue that the Children's legal and best interests were in conflict. Instead, Mother argues that this Court in **D.L.B.** misapprehended the Supreme Court's holding in **L.B.M.**, and that this Court should interpret **L.B.M.** to always require the trial court in an involuntary termination of parental rights proceeding to appoint independent legal counsel for the children.

We respectfully disagree with Mother: a remand is inappropriate in light of our holding in **D.L.B.**, in which we held that **L.B.M.** does not require appointment of independent legal counsel for a child in an involuntary termination proceeding unless the child's legal and best interests are in conflict. **D.L.B.**, 2017 WL 2590893 at *5. Although Mother contends that **D.L.B.** was incorrectly decided, this panel is bound by that decision. Mother does not argue that there was a divergence of the Children's legal and best interests in this case. Absent any indication of such a conflict, the court's appointment of the guardian *ad litem* to represent the Children was appropriate.

Turning to Mother's challenge to the trial court's termination of her parental rights, our standard of review is as follows:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

> Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.
>
> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

The trial court terminated Mother's parental rights pursuant to 23 Pa. C.S. § 2511(a)(2), (5), (8) and (b). On appeal, Mother concedes that CYF established clear and convincing grounds for termination of her parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8); however, Mother contends that the trial court abused its discretion and erred as a matter of

law in concluding that termination of her parental rights would best serve the needs and welfare of the Children pursuant to 23 Pa.C.S. § 2511(b). Mother's Brief at 12. Specifically, Mother asserts that the trial court focused on her faults as a parent, rather than the welfare of the Children, in concluding that Mother's parental rights should be terminated. *Id.* at 15. Mother further argues that the trial court failed to address the effect that termination of her parental rights would have on the Children. *See id.*

Because Mother does not contest proof of grounds for termination of her rights under Section 2511(a), we shall review the subject orders with respect to Section 2511(b) only. *See Nicholas v. Hoffman*, 158 A.3d 675, 688 n.17 (Pa. Super. 2017) (issue not raised in Statement of Questions Involved is not before us); *Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's Statement of Questions Involved is deemed waived under Pa.R.A.P. 2116(a)). Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b). Under this provision, the trial court was required to "give primary consideration to the developmental, physical and emotional

- 7 -

needs and welfare of the child." This Court has explained that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [these] needs." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted), *appeal denied*, 897 A.2d 1183 (Pa. 2006).

In assessing whether to terminate parental rights pursuant to Section 2511(b), "the trial court must take into account whether a natural parental bond exists between child and parents." *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000) (*en banc*). However, the mere existence of an emotional bond does not preclude termination of parental rights. *In re E.M.*, 620 A.2d 481, 482 (Pa. 1993). Rather, the court must determine whether the bond exists to such an extent that to sever it "would destroy an existing, necessary and beneficial relationship." *In re C.S.*, 761 A.2d at 1202. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Paul E. Cozza, we conclude that there is no merit to the issue Mother has raised in her Rule 1925(b) Statement. The trial court's opinion properly disposes of the question presented. *See* Trial Ct. Op. at 6-9 (finding that (1) Mother

- 8 -

has never been able to make the progress necessary for the Children to be returned to her care, (2) Mother has not made it a priority to visit the Children during their 17 months in foster care and has been unable to engage the Children or keep them safe during the times that she has visited, (3) the court-appointed psychologist reported that the Children are largely indifferent to Mother and have no bond with her, and (4) termination of Mother's parental rights meets the needs and welfare of the Children). Accordingly, we affirm on the basis of the trial court's opinion. The parties are instructed to include the attached redacted trial court opinion to any filings referencing this Court's decision.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2017

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN THE INTEREST OF T.S.,
                 E.S.,
Minor children

**CHILDREN'S FAST TRACK APPEAL**

OPINION

APPEAL OF: T.H.H.,
Natural mother

Docket No.: AP-208-2016, AP-209-2016
364 WDA 2017, 365 WDA 2017

BY:

Honorable Paul E. Cozza
440 Ross Street
Suite 5028
Pittsburgh, PA 15219

COPIES TO:

Kiersten Frankowski, Esquire
ACBF Juvenile Court Project
436 Seventh Avenue
Pittsburgh, PA 15219

Melaniesha Abernathy, Esquire
OCYF-Legal Unit-Adoption
Fort Pitt Commons Bldg., Ste. 101
445 Fort Pitt Blvd.
Pittsburgh, PA 15219

Cynthia Moore, Esquire
KidsVoice
Suite 700 Frick Building
437 Grant Street
Pittsburgh, PA 15219

1

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN THE INTEREST OF: T.S.,
                        E.S.,

Minor children

APPEAL OF: T.H.H.,
Natural mother

**CHILDREN'S FAST TRACK APPEAL**

Docket No.: AP-208-2016 & AP-209-2016
364 WDA 2017, 365 WDA 2017

OPINION

Procedural History:

On February 3rd, 2017 this Court granted Children Youth and Families'

(hereinafter OCYF) Petition to Terminate the Parental Rights of T.H.H., (hereinafter

Mother) pursuant to 23 Pa. C.S.A. § 2511(a)(2), (5), (8) and (b). Mother filed a

timely appeal as to the Court's finding that termination would best serve the

needs and welfare of the child pursuant to 23 Pa.C.S.A. §2511 (b). For the

reasons set forth below, the order of this Court should be affirmed.

History:

T.S. was born on June ██ 2013 and E.S. was born on August ██ 2014.

OFYC received a referral shortly after E.S.'s birth after Mother tested positive for

marijuana at her birth. Mother reported to smoking marijuana throughout her

pregnancy to help with nausea and to improve her appetite. The Father of

2

both children was identified as T.S.. OCYF did not file a Petition for Dependency at that time and instead implemented In-Home services, referred Mother to the POWER program, and attempted to assist Mother with a mental health evaluation. Mother attended a POWER evaluation in February of 2015 but never followed through with any drug and alcohol treatment[1]. Mother also continuously failed to take E.S. to her scheduled medical appointments. The caseworker had concerns about her parenting abilities as Mother often left the children in a bedroom with the TV blaring. On July 2nd, 2015, the caseworker went to the family home for an unannounced visit and she found Mother to be under the influence of marijuana. She also noted that the home again smelled like marijuana. The caseworker sought and obtained an Emergency Custody Authorization and the children were removed that day. The children were adjudicated dependent on July 14th, 2015. Mother was ordered to engage in dual diagnosis treatment, comply with random urine screens, and to attend a parenting program. Mother was permitted visitation with the children twice a week supervised at the OCYF office.

Permanency review hearings were held on September 17, 2015 and October 15, 2015. Mother failed to appear at either hearing. The Court determined that Mother had made no progress as she was not engaged in treatment and had not attended visits regularly.

---

[1] The caseworker reported smelling marijuana in the family home on a number of home visits

3

Dr. Beth Bliss, a court appointed psychologist, from Allegheny Forensic Associated was court ordered to evaluate the family. She first evaluated the family in December of 2015. Mother reported to Dr. Bliss that she only smoked marijuana when the children were sleeping and did not understand why it was an issue. Dr. Bliss was concerned that Mother was at great risk for using marijuana. This opinion was based on Mother's history, her admission that she had smoked while she was pregnant and even after her children had been removed. During the interactional evaluation, the children were indifferent to Mother. Dr. Bliss reported that Mother was unable to attend to both children at the same time, which created unsafe situations. She also reported that Mother abruptly left the evaluation room to use the bathroom. During this time, T.S. pulled a chalkboard down, which would have struck his sister had the evaluator not intervened. Dr. Bliss also noted that the children did not react when Mother left or entered the room again. Dr. Bliss opined that Mother should not be left alone with the children based upon her lack of parenting knowledge and skills. It was her opinion that the children were minimally bonded with Mother. While they recognized Mother, they appeared largely indifferent to her presence.

The parties appeared on February 25th, 2016 for a permanency hearing. Mother was deemed to be in moderate compliance as she had attended domestic violence therapy, and had engaged in dual diagnosis treatment. However, Mother had only attended three visits in the preceding three months and her visits were reduced to once a week. The parties appeared on July 5th,

4

2016 for a permanency hearing. Mother was deemed to be in minimal compliance. She failed to consistently attend visits or scheduled medical appointments. She was no longer attending dual diagnosis treatment on a regular basis, missed a number of screens, and tested positive for marijuana for some of the screens that she did attend.

Mother was referred to the ACHIEVA[2] program in August of 2016. This referral was based upon Mother's IQ score and intellectual disability. Mother was offered time before the visit to take advantage of additional services from ACHIEVA. However, Mother never took advantage of this opportunity. Furthermore, Mother missed eleven out of 24 visits at this facility. The parenting support staff reported that Mother made very little progress at the visits and required a great deal of verbal and physical direction in parenting the children. The staff member who worked with Mother opined that she would need around the clock support to parent the children and could not do so without supervision. The staff at ACHIEVA also expressed concern over Mother's ability to comfort the children when they were in distress. It was their ultimate opinion that Mother could not ensure the children's safety during visits.

Dr. Bliss conducted an interactional evaluation with the children and the foster parents in September of 2016. T.S. displayed problematic behavior but much less so than with Mother. She opined that the foster parents were often able to calm the child down. T.S. sought out Foster Mother and showed her a lot

---

[2] This program supports individuals with disabilities, specifically parents with an IQ of less than 70.

5

of physical affection.  Ultimately, Dr. Bliss testified that the children would not suffer any psychological harm if they did not see their mother again.

Dr. Bliss conducted an individual evaluation of Mother in October of 2016. Mother reported to still using marijuana and was not making her weekly visits a priority.  During the interactional evaluation, the children again appeared indifferent to Mother.  She was more interactive with T.S. but was still unable to attend to both children simultaneously.  Mother was unable to redirect T.S. when he displayed problematic behavior.  Dr. Bliss opined that Mother had not made any progress and that she would have serious concerns if Mother was left alone to parent the children.

The Petition to Involuntarily Terminate Mother's Rights was filed on November 9th, 2016.

Mother alleges that this Court abused its discretion and/or erred as matter of law in concluding that termination of her parental rights best suits the needs and welfare of the children pursuant to 23 Pa.C.S.A. § 2511(b).  23 Pa.C.S.A. §2511(b) provides in part:

(b) Other considerations- The court in terminating the rights of a parent shall give primary consideration to the developmental, physical needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing, and medical care if found to be beyond the control of the parent. 23 Pa.C.S.A. § 2511 (b).

"Pursuant to 23 Pa.C.S.A. § 2511(b), the trial court must take into account whether a natural parental bond exists between child and parents, and whether termination would destroy an existing, necessary and beneficial relationship".  In

6

re C.S., 761 A.2d 1197, 1202 (Pa.Super.2000). "While a parent's emotional bond with his or her child is a major aspect of the Subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. The mere existence of an emotional bond does not preclude termination of parental rights". In re A.S., A3rd473 (Pa.Super.2010).

During the pendency of this case, Mother has attended 28 out of 79 urine screens. Mother was also ordered to complete Domestic Violence Treatment based upon multiple concerns involving the father of the children. Father appeared very controlling and verbally abusive towards Mother. Mother completed Domestic Violence Therapy at the Women's Center and Shelter in the summer of 2015. However, she maintained a relationship with Father after completing the program. She remained financially dependent on him throughout the case. Father failed to cooperate with any of OCYF's or the Court's directives. A number of In-Home services were instituted for Mother, however they all closed out. Specifically, Holy Family worked with Mother for six months. These services closed out after Father moved into the family home and Mother refused to cooperate with the service. The in-home worker observed many of the same concerns as the caseworker when she visited the family home. During one visit, she observed a knife within reach of the oldest child as well as a used condom on the floor. This worker expressed her concern to

7

Mother, who failed to recognize the dangers of these items being in reach of a child.

Mother has also missed a great deal of visits. When she did attend visits, it was difficult for Mother to attend to more than one child at a time. At times, T.S. would tantrum and Mother failed to follow prompts to address his behavioral issues. It was reported that she would often ignore T.S. entirely when he misbehaved.

The children were placed in their current foster home on September 15th, 2015. T.S. had behavioral concerns as well as difficulty with his speech when he came into care. Since being placed in this foster home, the child's behavior has improved greatly. His speech has also improved and he is developmentally on track. The caseworker has observed the children in the foster home and noted that they are bonded with their caretakers. The Foster Parents have been diligent in addressing T.S.'s behavioral issues.

This Court finds that OCYF has presented clear and convincing evidence to support the involuntary termination of the parental rights of Mother as to 23 Pa.C.S.A. §2511 (b). Mother has never been able to make the progress necessary for the children to be returned to her care. The children have been in care for 17 months. Mother has not made visiting her children a priority. When she has visited, she has been unable to engage the children or keep them safe during visits. Dr. Bliss reported that the children are largely indifferent to Mother

8

and have no bond with her.  Termination of her parental rights clearly meets the needs and welfare of these children.

For those reasons, the decision of this Court should be affirmed.

BY THE COURT:

_____, J.